Dennison Construction Company, Plaintiff, *v.* Margaretha Manneschmidt, Respondent, and Patrick H. McKenna et al., Comprising the Firm of McKenna & Wood, Appellants.

Building contract — construction of provision giving owner right to complete building upon contractor's default — rights and remedies of parties thereunder — erroneous judgment against owner in foreclosure of mechanic's lien by contractor — Appellate Division has power to reverse such judgment but cannot modify it by making deduction therefrom and affirm it as so modified.

1. A building contract provided that if the contractor failed to perform his agreement the owner should be at liberty to terminate the employment of the contractor and to complete the work; "and in case of such discontinuance of the employment of the Contractors they shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the Owner in finishing the work, such excess shall be paid by the Owner to the Contractors; but if such expense shall exceed such unpaid balance, the Contractors shall pay the difference to the Owner." The owner refused to make a payment on account of the failure of the contractor to comply with the terms of the contract, whereupon the contractor refused to complete the work and the owner proceeded to finish the building. In an action to foreclose a mechanic's lien the contractor recovered the balance between the amount paid by the said owner in completing the contract and the balance remaining unpaid on the contract. *Held*, that the owner was under no obligation to finish performance of the contract on account of the contractor, but had the right to finish the building and hold the contractor liable in damages for the breach; and that there was no evidence to sustain the finding of fact "that thereafter the defendant proceeded to and did complete the performance of said contract, for the account of the plaintiff."

2. Two courses were open to the Appellate Division on this appeal: (1) It could reverse the judgment for plaintiff on the facts, or on the law, if legal error existed, or upon both, and order a new trial; or (2) it could reverse the judgment and order a new trial unless

the proper parties should stipulate to make the reduction suggested, and in that event it could affirm the judgment as thus modified, but it had no power, under the facts stated, to strike from the judgment the principal part thereof and to affirm it as thus modified.

*Dennison Construction Co.* v. *Manneschmidt*, 129 App. Div. 600, reversed.

(Submitted January 25, 1912;  decided February 13, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1908, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mechanic's lien filed by the plaintiff as contractor against certain premises belonging to the defendant Manneschmidt and the complaint is in the form usual in such cases. The owner answered, alleging, among other things, that the plaintiff failed to perform the contract entered into between them for the construction of a building on the premises in question in many respects whereby she sustained damages to the amount of $4,453 for which sum she demanded judgment against the plaintiff. A reply was served. The answer of the defendants McKenna and Wood is not printed in the record, although it is stated that they served one, appeared by counsel upon the trial and without objection from any party furnished evidence tending to show that they, as sub-contractors, performed work and furnished material worth $1,254.44 in erecting the building. No part of this sum has been paid and they filed a lien therefor in due time and form.

The trial court found in substance that on the 30th of January, 1906, the plaintiff entered into a contract with the defendant Manneschmidt whereby it agreed to furnish the materials, do the work and erect a brick dwelling for her according to certain plans and specifications. In consideration thereof she agreed to pay the plaintiff the sum of $11,800 in five payments as the work pro-

gressed, the fourth and fifth being set forth as follows: "Fourth payment: When standing trim in place, stairs up and priming painting done, including roofs, $3,500. Fifth payment: When all is completed, according to this contract and accompanying specifications, less cost of total brick furnished by owner, $2,600."

Among the provisions of the contract were the following: "Article V. Should the Contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the Architects, the Owner shall be at liberty, after three days' written notice to the Contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the Contractor under this contract; and if the Architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the Owner shall also be at liberty to terminate the employment of the Contractors for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the Contractors they shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the Owner in finishing the work, such excess shall be paid by the Owner to the Contractors; but if such expense shall exceed such unpaid balance, the Contractors shall pay the difference to the Owner. The expense incurred by the Owner as herein provided, either for furnishing mate-

rials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the Architect, whose certificate thereof shall be conclusive upon the parties. * * * Article X. It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

The trial court further found that the owner made the first, second and third payments mentioned in the contract, amounting to the sum of $5,700; that on June 30, 1907, the plaintiff demanded the fourth payment, but the owner refused to make it; "that on the 5th of July, 1907, the plaintiff ceased furnishing materials and performing work under the contract and refused to perform any further work or furnish any other materials, for the reason that it had not received the fourth payment of $3,500; that at the time the plaintiff demanded the fourth payment and at the time it refused to do any further work or furnish any other materials in the performance of the said contract, the plaintiff had not performed its contract up to the period of performance which would entitle it to the fourth payment thereunder, and the work already done by it and materials already furnished were inferior and different from those called for by the contract in the following particulars." The findings then specified twenty-six separate and independent items of defective work, defective materials and failures to comply with the plans and specifications. Some of the defects apparently could not be remedied without taking down the building or a part thereof, such as the use of two by six inch rafters instead of three by six; wall plate three by ten instead of four by twelve; one and one-fourth bridging on beams instead of two by three. "The

roof had no pitch, although the specifications required it to pitch to the rear. Discolored and sappy wood was used for trim in bedrooms, although clear white wood was required. The roof sagged to the center. One of the walls of the house is at one point at least one inch off the building line;" although "the specifications required the owner to furnish to the plaintiff a survey of the property on which the house was to be built" and the owner "did furnish a survey before the work was started" which "clearly indicated the building lines of the defendant's property."

Findings of fact numbered twelve to sixteen inclusive were as follows: " XII. That thereafter the defendant, Manneschmidt, proceeded to, and did complete the performance of said contract, for the account of the plaintiff.

"XIII. That at the time the plaintiff ceased work under said contract it had received on account thereof the first three payments thereunder, aggregating $5,700.

" XIV. That the plaintiff, at the special instance and request of the defendant, Manneschmidt, had performed certain extra work, labor and services, and furnished certain extra materials, of the reasonable value of $365.35 ; on account of which, the sum of $81.25 was paid by the defendant, Manneschmidt, leaving a balance due the plaintiff for extra work of $284.10.

"XV. That in furnishing the work, labor and services and material necessary to complete plaintiff's contract the defendant, Manneschmidt, paid, laid out and expended the sum of $4,220.15.

"XVI. That the balance between the amount paid by the said defendant in completing the contract and the balance remaining unpaid on the contract, plus the extra work, amount to $2,163.95."

The court found as conclusions of law that the plaintiff was not entitled to the fourth payment at the time it stopped work, but that it was entitled to judgment

adjudging it to have a valid lien against the property for the sum of $2,163.95 with interest from July 1st, 1906, subject to the lien of the defendants McKenna and Wood for the sum of $1,254.44. The judgment had the usual provision for foreclosure and sale and awarded costs to the plaintiff and to the defendants McKenna and Wood.

The owner appealed to the Appellate Division, which made the following order: "It is ordered and adjudged that the judgment so appealed from be and the same is hereby affirmed, modified by reducing the amount found to be due to the sum of $284.10 for extra work and material, and as thus modified, affirmed, without costs." Two of the justices dissented and voted to affirm generally. The defendants McKenna and Wood appealed from said order and from each and every part thereof.

*John H. Durack* and *Herman A. Brand* for appellants. Where work has been abandoned by the contractor and the contract contains a clause whereby the owner reserves the right to complete, after a breach by the contractor, or after the failure to do so, upon notice, the owner may elect either to declare the forfeiture or complete the work himself. If he elects to complete he waives the right to declare a forfeiture, and the contractor is entitled to receive any balance of the contract price remaining over and above the cost of completion. (*Van Clief* v. *Van Vechten*, 130 N. Y. 571; *Ogden* v. *Alexander*, 143 N. Y. 356; *White* v. *Livingston*, 69 App. Div. 361; *Graf* v. *Cunningham*, 103 N. Y. 369; *Fraenkel* v. *Friedmann*, 199 N. Y. 351; *Steiger* v. *London*, 141 App. Div. 382.)

*Addison S. Sanborn* for respondent. Performance, substantial or otherwise, not having been shown, neither the plaintiff nor the defendant lienors, McKenna & Wood, were entitled to recover. (*Spence* v. *Ham*, 163 N. Y. 220; *E. L. & C. Co.* v. *Worthington*, 186 N. Y. 407;

*Schultze* v. *Goodstein,* 180 N. Y. 248; *Mitchell* v. *Williams,* 80 App. Div. 527; *Glacius* v. *Black,* 50 N. Y. 145; *Norton* v. *U. S. W. P. Co.,* 89 App. Div. 238.) The plaintiff having abandoned the contract, the defendant Manneschmidt was at liberty to proceed with the completion of the contract upon her own account, without being liable to account to the plaintiff or its sub-contractor for the cost and completion. (*Ogden* v. *Alexander,* 140 N. Y. 356; *Fraenkel* v. *Friedmann,* 199 N. Y. 351.)

VANN, J. The judgment rendered at Special Term rests on the twelfth finding of fact, which for convenience we quote again as follows: "XII. That thereafter the defendant, Manneschmidt, proceeded, to and did complete the performance of said contract, for the account of the plaintiff."

This finding involves two questions of fact, whether the owner completed performance of the contract and if so whether such performance was "for the account of the plaintiff." The principal part of the judgment depended upon performance of the contract, for unless it was performed either by the plaintiff or in its behalf, it has no lien to enforce, except for the extra work. The Appellate Division had no power, under the facts found, to strike bodily from the judgment the principal part thereof and to affirm it as thus modified. Two courses were open to that learned court: (1) It could reverse the judgment on the facts, or on the law, if legal error existed, or upon both, and order a new trial; or (2) it could reverse the judgment and order a new trial, unless the proper parties should stipulate to make the reduction suggested, and in that event it could affirm the judgment as thus modified. Neither course was pursued, but the judgment was modified without consent by making an absolute deduction therefrom and a new trial was not ordered. The modification apparently involves the reversal of the finding of fact above quoted, as otherwise

there would be no basis for it, even upon the assumption that the court had the power to make it. The opinion of the court also shows that this was intended, for it is expressly stated that " there was no evidence whatever to support the said finding," and that the other findings " required that the complaint should be dismissed, except, it may be, for the items of extra work found." The court apparently intended to reverse on the facts and to dismiss the complaint as to all but the extra work. While it had power to reverse the findings of fact, it had no power, under the circumstances, to dismiss the complaint wholly or in part, or to reduce the judgment by striking out the greater part thereof without the consent of the parties in whose favor the judgment was rendered.

We also are of the opinion that there is no evidence to support the twelfth finding of fact as to either of the propositions involved therein. After the plaintiff refused further performance, the owner proceeded to finish the building. She had to finish it in order to make any use of it and to save what she had already paid to the plaintiff. She did not, however, complete the building according to the plans and specifications, for the undisputed evidence shows that many of the defects specified in the findings were not remedied and that no attempt was made to remedy them. The evidence further shows without dispute what the owner did, the amount expended by her and the particular item of work or materials for which each payment was made. It also shows specifically that what was done did not include seven distinct defects in the work and material of the plaintiff, as those defects were found by the court at Special Term. While some defects were cured, others were not in any way affected.

Moreover, there is no evidence that the owner proceeded or intended to proceed under article five of the contract. No " refusal, neglect nor failure " was certified by the architect and " three days written notice " was not given to the contractor. No notice of any kind was

given by the owner and none was required if she proceeded on her own account. She neither broke the contract nor abandoned the work but the contractor did both. The owner was under no obligation to finish performance of the contract on account of the contractor, for she had the right to finish the building on her own account and hold the contractor liable in damages for the breach, as she sought to in her counterclaim. It is true that in finishing the house she followed the plans and specifications so far as she completed it at all, but this was necessary in order to get a building as near as possible like the one she had contracted for and to measure the damages she had sustained by the breach of the contract.

The learned trial justice thought, as he stated in his opinion, that "it was the intention of the parties, as manifested by article five of the contract, that in case of the abandonment of the work by the contractor, the owner should proceed to completion under the contract and specifications." Commenting on this conclusion the Appellate Division said: "Owners would be in evil case indeed if this clause applied when the contractor after breaking the contract by substituting inferior work and material for that contracted for, or altogether omitting work and material contracted for, abandons the work altogether, as is the case here; for they could not leave their property in its unfinished condition, and yet if they completed it they would have to do it as the agent of their contractor who had thus grievously wronged them. The idea that a contractor may by abandoning the work put the owner in the position of being obliged to complete as his agent or trustee, if he completes at all, and to account to him at the end, only needs to be stated to expose its absurdity."

The owner did not plead that she completed the contract nor that it was completed by any one, but she alleged a failure by the plaintiff to complete in certain

specified particulars and that she thereby sustained damages. No presumption arose from the pleadings or proofs, including the contract, that what the owner did was on account of the plaintiff. We think that there is no evidence that the contract was so performed as to remedy many of the defects of the contractor and none that in finishing the building, so far as it was finished, the owner acted under article five of the contract, or as the agent of the contractor in any way. The error of the Special Term was in making finding number twelve without evidence to support it and the error of the Appellate Division was in the attempt to modify instead of expressly reversing on the facts in the manner required by section 1338 of the Code of Civil Procedure and ordering a new trial.

Both judgments below should be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., HAIGHT, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; GRAY, J., absent.

Judgments reversed, etc.